# In the United States Court of Federal Claims

No. 18-540C
Filed: May 4, 2020

| | |
|---|---|
| **BLUEGRASS LODGE APARTMENTS, LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant.* | **Keywords:** RCFC 56(a); summary judgment; contract; USDA; loan; default; material breach; duty of good faith and fair dealing |

*Daniel Thomas*, Thomas, Arvin & Adams, Hopkinsville, KY, for the Plaintiff.

*Christopher Harlow*, with whom were *Franklin White, Jr.,* Assistant Director, *Robert Kirschman Jr.,* Director, Civil Division, *and Joseph Hunt*, Assistant Attorney General, U.S. Department of Justice, Washington, D.C., and *Judith McKenzie-Abraham*, U.S. Department of Agriculture, of counsel, for the Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**[1]

This breach of contract suit arises from a 1984 loan agreement between the United States Department of Agriculture ("USDA") and Bluegrass Lodge Apartments, Ltd. ("Bluegrass") as part of a USDA Rural Development housing program for low-income renters. Before the Court is the United States' Motion for Summary Judgment.

On May 10, 2018, following transfer from the U.S. District Court for the Western District of Kentucky, Bluegrass filed its Complaint seeking $277,906 for "rental assistance and utility allowances wrongfully withheld." (Compl. at ¶ 54, ECF No. 4). Fact discovery closed on March 1, 2019. (Sched. Order, ECF No. 10). On March 27, 2019, the United States filed a Motion for Summary Judgment. (Def. Mot., ECF No. 13). Bluegrass filed its Response on April 17, 2019. (Pl. Resp., ECF No. 14). The United States filed its Reply on May 1, 2019. (Def. Reply, ECF No. 15). On April 30, 2020, the Court heard oral argument on the United States' Motion for Summary Judgment. (*See* ECF No. 24). The matter now stands fully briefed and ripe for decision.

---

[1] This case was originally assigned to Chief Judge Braden, (ECF No. 2) and has since been reassigned multiple times. (*See* ECF Nos. 12, 17, 21). This case was assigned to Judge Tapp on December 3, 2019. (ECF No. 21).

For the reasons set forth below, the Court **GRANTS** the United States' Motion for Summary Judgment.

## I. Background

Bluegrass participated in a USDA program that provided mortgage financing for a low-income housing project near Hopkinsville, Kentucky. Bluegrass failed to comply with the contractual and regulatory conditions of this program, leading the USDA to declare Bluegrass in default, accelerate the loan, and foreclose on the property. Bluegrass's claims arrive in this Court on transfer from that foreclosure action.

### A. Terms of the USDA Housing Program Loan

Bluegrass was originally a limited partnership between David Brainard, Carol Ham, and Susan Reyes formed to construct a 48-unit apartment complex in Pembroke, Kentucky.[2] (Compl. at ¶¶ 6–7). On March 23, 1984, Bluegrass and the USDA entered a 50-year loan agreement. (Pl. Resp., Ex. 1 (the "Loan Agreement")). In conjunction with the Loan Agreement, Bluegrass executed a mortgage in favor of USDA in the amount of $1,430,700 with an interest rate of 11.875 percent. (Compl. at ¶ 7; Pl. Resp., Ex. 2 (the "Mortgage")). Pursuant to the Loan Agreement, Bluegrass also entered an Interest Credit and Rental Assistance Agreement (the "ICRA Agreement") in which the USDA provided: (1) interest credit subsidies, which effectively dropped the interest rate on the loan to one percent; and (2) rental assistance to subsidize the costs of providing 15 low-income housing units. (Compl. at ¶¶ 7–9; Compl., Ex. 4). Each year, Bluegrass renewed its rental assistance payment eligibility and compliance by executing one-year rental assistance agreements ("Renewal Agreements") in which Bluegrass agreed to abide by the regulations of the program. (*See, e.g.*, Compl., Ex. 5 at ¶ 2). The ICRA Agreement and Renewal Agreements further provided that if Bluegrass defaulted on the Loan Agreement, Mortgage, or ICRA Agreement (collectively the "Loan Documents"), or violated any program regulations, the USDA was entitled to suspend or terminate the interest credit subsidies and/or rental assistance payments. (Compl., Ex. 4 at ¶ 14; Ex. 5 at ¶ 7).

Of the numerous requirements imposed by the Loan Documents, the three provisions chiefly relevant to this case—the Reserve Account, the Security Deposit Account, and the financial reporting requirements—are found in the Loan Agreement. (*See* Def. Mot. at 4; Pl. Resp. at 4, 6). Under the Loan Agreement, Bluegrass was required to maintain a Reserve Account and a Security Deposit Account, each separate from the General Operating Account. (Loan Agreement at ¶ 5). Bluegrass was required to deposit a minimum of $14,370 annually into the Reserve Account until its balance reached $143,700. (*Id.* at ¶ 5(b)). Withdrawals from this account required prior authorization and consent of the USDA. (*Id.*). The Security Deposit Account was required to hold tenants' security deposits in escrow to cover damage to the unit beyond normal wear and tear. (Def. Mot., Appx. ("DA") at DA019; Loan Agreement at ¶ 5).

---

[2] Ham and Reyes were later removed as general partners by the Christian County, Kentucky, Circuit Court. (Compl. at ¶ 14). Thereafter, Penny and David Brainard managed the business. (*Id.* at ¶ 15).

The interest rate credit subsidy and rental assistance were revaluated and renewed yearly through separate one-year agreements. (*See, e.g.*, Pl. Resp., Ex. 4; Compl., Ex. 5). Section 7(b) of these agreements provided:

> If [Bluegrass] defaults on any provision of the loan agreement, resolution, note, interest credit agreement, security instrument, or other supplementary or related agreements, or violates any program regulations, then the Government may suspend or terminate this Agreement on any specified date following the default.

(*See, e.g.*, Compl., Ex. 5). Cancellation or suspension of federal subsidies would not modify the rent owed by the low-income tenants. (DA007). The Loan Agreement contained a similar provision:

> [i]f [Bluegrass] should fail to comply with or perform **any provisions** of this agreement or any requirement made by the Government pursuant to this agreement, **such failure shall constitute default as fully as default in payment or amounts due on the loan obligations.**

(Loan Agreement at ¶ 7(b) (emphasis added)). Paragraph 6 of the Loan Agreement listed several covenants of the Rural Development program. (Loan Agreement at ¶ 6). Paragraph 6, subsection "b", required that Bluegrass:

> [m]aintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

(*Id.*).

These three principal covenants—the establishment and maintenance of a Security Deposit Account, the establishment and minimum contribution to a Reserve Account, and vigorous financial reporting—were key terms to the USDA's provision of a low-income housing program loan.

### B. Bluegrass's Defaults

On July 17, 2008, the USDA conducted a physical inspection of the Bluegrass apartment complex and reviewed its records. (DA018–025). On September 24, 2008, following this inspection, USDA noted numerous areas of noncompliance in a letter to General Partner David Brainard. (DA018). The letter identified three specific items that are relevant to this cause of action:

(1) Bluegrass "failed to properly fund the project Reserve Account" which, as of April 1, 2008, "was delinquent . . . in the amount of $20,053.43." (DA020).

(2) Bluegrass management "used the Security Deposit Account funds for unauthorized purposes and [had] failed to keep the account properly funded." (*Id.*).

(3) With respect to its financial reporting requirements, Bluegrass management "[had] not provided the required reports on a timely basis," and those reports that had been submitted "contain[ed] errors that cause[d] the validity of the reports to be in doubt." (DA021).

The USDA suggested corrective action for each item of noncompliance. (DA020–021).

Bluegrass responded to this letter on November 7, 2008, offering explanations for areas of noncompliance. (DA027). In this letter, Bluegrass admitted that funds from the Security Deposit Account were used for "repairs . . . and taxes in 2007," but claimed the account had since been replenished. (*Id*.). Bluegrass also committed to updating its accounting system and providing timely financial reports going forward. (DA028).

However, on August 5, 2009, the USDA sent Bluegrass a letter "to address items from previous correspondence that have not been resolved." (DA032). The USDA noted the Reserve Account was underfunded by $29,476.14, the Security Deposit Account was underfunded by $5,357.96, and no financial repots had been submitted since April of 2008. (DA033). Additionally, reports prior to April 2008 "contained major discrepancies." (*Id*.).

On March 26, 2010, the USDA sent Bluegrass a "Notice of Intent to Pursue More Forceful Servicing Actions" with respect to the housing project loan. (DA035). In this Notice, the USDA highlighted Bluegrass's continued failure to properly fund the Security Deposit and Reserve accounts, failure to file financial reports since April of 2008, and noted numerous other reports were past due. (*Id*.). The letter notified Bluegrass that the USDA intended to "take further action unless alternative arrangements are promptly made" to resolve the issues raised by the Notice. (*Id*.).

C.  *Acceleration of the Loan, Mediation, and Foreclosure*

Bluegrass failed to resolve the issues raised in the March 26, 2010 Notice, and on November 15, 2010, the USDA sent Bluegrass a Notice of Acceleration declaring the entire principal loan amount of $1,430,700 "immediately due and payable." (Compl., Ex. 6). The Notice of Acceleration cited three reasons for this acceleration. First, Bluegrass "failed to make deposits to its Reserve Account as required by 7 C.F.R. § 3560.306(c) and its Loan Agreement" and the Reserve Account was underfunded by $20,053.43. (*Id*. at 2). Second, Bluegrass failed to comply with the Security Deposit Account requirements when it used funds from the account to pay property taxes in 2007, underfunding the account, and failing to deposit funds commensurate with new tenancies in 2008. (*Id*.). Third, Bluegrass failed to comply with comply with financial reporting requirements, audit requirements, and failed to submit nonfinancial reports required by the Loan Documents and federal regulations. (*Id*.). This Notice also stated:

> Unless full payment of [Bluegrass's] indebtedness is received . . . within 30 days of the date of this letter, the United States will take action to foreclose the above described real estate instruments, take possession of any project accounts, suspend any rental assistance, cancel any interest credit, notify tenants that foreclosure will be initiated, and pursue any other available remedies.

(*Id*.). This Notice also informed Bluegrass of the opportunity "to have an informal meeting with the decision maker . . . before the foreclosure takes place." (*Id*. at 3).

On January 7, 2011, representatives from Bluegrass, including David Brainard, met with USDA and promised all defaults identified in the Notice of Acceleration had been cured, or would be cured shortly. (DA036). However, Bluegrass provided no formal evidence of those cures during this meeting and were given 30 days ("no later than February 7, 2011") to submit evidence the referenced defaults had been cured or else the USDA would proceed with foreclosure. (*Id*.). On February 4, 2011, Bluegrass submitted bank statements for the Security Deposit Account at Regions Bank which showed a balance of $14,845.00, an amount Bluegrass asserted was $235 in excess of the minimum requirements. (DA037, 042).[3] On February 7, 9, and 11, 2011, Bluegrass transferred funds from its reserve account without the USDA's approval. (DA052). On February 18, 2011, the USDA reaffirmed its decision to accelerate the loan. (*Id*.). On March 17, 2011, Bluegrass requested mediation. (*Id*.).

On May 25, 2011, after telephonic mediation, the USDA and Bluegrass entered a Memorandum of Understanding ("MOU") to resolve the outstanding issues of default. (Compl., Ex. 8; Pls. Resp. at 6). Under the MOU, Bluegrass agreed to fund the Reserve Account at required levels within 60 days.[4] (Compl., Ex. 8 at ¶ 6). Bluegrass also agreed to maintain the required minimum levels of both the Security Deposit Account and Reserve Account from the mediation date forward. (*Id*.). David Brainard and his wife Penny, as general partners, agreed to deposit their management fees in the Reserve Account until it was fully funded. (*Id*. at ¶ 7). The USDA promised to conduct a site visit within 30 days of the mediation date and if the inspection was satisfactory and all conditions of cure were met, it would terminate the foreclosure proceedings of the property. (*Id*.).

On October 28, 2011, the USDA notified Bluegrass of its failure to comply with the terms of the MOU and that the USDA would proceed with foreclosure. (DA049). Specifically, on July 31, 2011—approximately 60 days from execution of the MOU—the Reserve Account was underfunded by $57,113.20. (*See* DA046; Compl., Ex. 8 at ¶ 6). Additionally, the Brainards' management fees had not been deposited in the account for the month of July 2011, Bluegrass failed to furnish bank records despite multiple requests from the Madisonville Area Office, and remained delinquent on various reporting requirements. (DA048).

Thereafter, Bluegrass exercised its right to appeal the foreclosure decision. (DA050). On March 6, 2012, the USDA National Appeals Division upheld the October 28, 2011 decision to accelerate the loan and initiate foreclosure proceedings. (DA050–054). The Appeals Division

---

[3] While these statements showed an overfunding of the account at Regions Bank, statements provided from BB&T Bank showed an online transfer of $12,300 out of the Reserve Account on February 2, 2011 into the Security Deposit Account. (DA043–044). The statements also show Check No. 1081 in the amount of $12,800 drawn on the BB&T Security Deposit Account on February 3, 2011, immediately reducing the balance of that account to less than $100. (*Id*.).

[4] As of May 1, 2011, the Reserve Account minimum required balance was $64,562.91. (Compl., Ex. 8 at ¶ 6). Per the terms of the Loan Documents and the MOU, monthly contributions of $1,192.25 (or $14,307 annually) were required. (*See id*.). Thus, the minimum required balance after July 24, 2011 was $66,947.41.

determined "[Bluegrass] did not keep its reserve and tenant security deposit accounts at the required funding level" and following acceleration, "[Bluegrass's] reserve and tenant security accounts remain[ed] delinquent or underfunded" in contravention of the terms of the MOU. (DA053–054). Thus, the USDA concluded "[Bluegrass] did not operate and manage the [low-income housing project] in accordance with the terms and conditions of its loan agreements and [USDA] financial reporting requirements" thus was in nonmonetary default. (DA053).

On April 16, 2014, the United States filed a foreclosure action in the U.S. District Court for the Western District of Kentucky. *United States v. Bluegrass Lodge Apartments, Ltd.*, No. 5:14-CV-00074, 2018 WL 773756 (W.D. Ky. Feb. 7, 2018). Bluegrass asserted five counterclaims in its Answer. *Id*. at *2. Bluegrass requested an equitable accounting and either payment or credit of rental assistance subsidies withheld, declaratory judgment and damages for breaches of contract and the duty of good faith and fair dealing in withholding the rental assistance subsidies, and finally, temporary and permanent injunctive relief for tortious interference with contractual and business relations stemming from the USDA's notice to Bluegrass's tenants regarding the pending foreclosure action. *Id*. The District Court partially granted Summary Judgment in favor of the United States and ordered Bluegrass's surviving damages claims for breach of contract and breach of the duty of good faith and fair dealing be transferred to this Court. *Id*. at *4. On May 10, 2018, Bluegrass filed an Amended Complaint in this Court alleging breaches of contract and the duty of good faith and fair dealing. (Compl. ¶¶ 34–44, 45–54).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those which might significantly alter the outcome of the case; factual disputes which are not outcome-determinative will not preclude summary judgment. *Id*. In determining whether summary judgment is appropriate, the court should not weigh the credibility of the evidence, but simply "determine whether there is a genuine issue for trial." *Id*. at 249. In so deciding, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578–88 (1986).

Contract interpretation is a question of law particularly suited for summary judgment. *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 717 (Fed. Cir. 2008); *Varilease Tech. Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998)).

## III.  Discussion

The United States argues that the USDA's termination of Bluegrass's rental assistance payments was legally permissible and authorized by the parties' contract, thus the termination and acceleration did not breach either the contract or the duty of good faith and fair dealing. (Def. Mot. at 9). Bluegrass asserts that it did not commit a material breach and thus the USDA was not entitled to declare Bluegrass in default. (Pl. Resp. at 10). Bluegrass further argues that its

claim for breach of the duty of good faith and fair dealing is separate from the breach of contract claim and the United States is not entitled to summary judgment. (*Id*. at 16).

The Court agrees with the United States that the USDA legally exercised its right to terminate rental assistance payments upon Bluegrass's breach, thus both Bluegrass's claims of breach of contract and breach of the duty of good faith and fair dealing must fail.

   A. *The USDA Legally Terminated Rental Assistance Payments to Bluegrass*

The United States argues Bluegrass's failure to maintain Reserve and Security Deposit accounts, and failure to make financial disclosures were nonmonetary defaults amounting to material breach of the parties' contract evidenced in the Loan Documents. (Def. Mot. at 10). Bluegrass argues these nonmonetary defaults were not material breaches, thus the USDA had no authority to terminate the contract and rental assistance payments should have continued. (Pl. Resp. at 10–15). The Court agrees with the United States that Bluegrass's numerous violations of provisions within the Loan Documents and corresponding federal regulations placed Bluegrass in material breach, entitling the USDA to terminate rental assistance payments, accelerate the loan, and foreclose on the project. The USDA's exercise of this right did not itself amount to breach of contract.

The Loan Documents are clear that the loan was made pursuant to a federal program, thus incorporated the regulations administering that program. (*See, e.g.*, Compl., Ex. 5 at ¶ 2 ("The borrower agrees to abide by the present and future regulations of the Government in the administration of this program.")). The Loan Documents further made clear that violation of any program regulations would be a condition of default permitting the USDA to suspend or terminate rental assistance payments. (*See, e.g.*, *id*. at ¶ 7(b) ("If the borrower defaults on any provision of the [Loan Documents] . . . or violates any program regulations, then the Government may suspend or terminate this Agreement on any specified date following the default.")). Under 7 C.F.R. § 3560.11, "default" is defined as:

> [f]ailure by a borrower to meet significant monetary or non-monetary obligations or terms of a loan, grant, or other agreement with the [USDA] which remain unpaid or unperformed for more than 30 days after the date such obligation is due or required to be paid or performed, or within time periods specified in notices of compliance violations.

Further, failure to "[k]eep general operating expense, reserve, and other financial accounts related to a housing project at required funding levels" is expressly identified as a condition of nonmonetary default under 7 C.F.R. § 3560.452(c)(3). This requirement is reiterated throughout the Loan Documents. (Loan Agreement at ¶ 7; Mortgage at 2; ICRA Agreement at ¶ 17).

Bluegrass readily admits that as of 2006, the Reserve and Security Deposit accounts had been "pilfered" by previous management and Bluegrass did not maintain balances to comply with the terms of the Loan Documents. (Compl. at ¶ 14–16). In July 2008 the USDA became aware that Bluegrass was in breach of the terms of the Loan Documents. (DA018–25). Specifically, the Reserve and Security Deposit accounts were underfunded, and Bluegrass was delinquent on its reporting requirements. (*Id*.). Nevertheless, the USDA maintained communication with Bluegrass, and its new management team, as Bluegrass attempted to rectify

these issues from 2008 to 2010. (DA032–035). However, following the USDA's inspection in 2008, the only time Bluegrass reported an adequately funded Security Deposit Account was on or about February 4, 2011, coinciding with a large, unauthorized withdrawal from the Reserve Account, constituting an additional breach. (*See* DA037, 042). Although Mr. Brainard stated that he thought the Reserve Account had once been fully funded in either 2008 or 2009, there is no evidence that the Reserve Account was fully funded at any time following the 2008 inspection. (*See* Depo. of D. Brainard, Pl. Resp., Ex. 5 at 19, 35). Bluegrass further admits it failed to file timely financial reports. (*Id*. at ¶ 26).

By November 15, 2010, Bluegrass was *still* noncompliant with the terms of the Loan Documents and was declared in default. (Compl., Ex. 6). In early 2011, the USDA agreed to mediation in lieu of foreclosure, but this too failed to spur Bluegrass's compliance with either the Loan Documents or the Memorandum of Understanding. (DA049). By July 31, 2011, the Reserve Account was critically underfunded, and financial reports remained unfiled. (DA052). Consequently, in October 2011, the USDA exercised its contractual rights to proceed with foreclosure on the project. (DA049).

These breaches were significant to both the terms of the Loan Documents and the overall purpose of the program. For example, the purpose of the Reserve Account is to "meet the major capital expense needs of a housing project[.]" 7 C.F.R. § 3560.306(a). "The [USDA] has a financial interest in a project over the life of its loan." USDA Handbook 2-3560, at Section 4-12 (2005), available at https://www.rd.usda.gov/files/hb-2-3560.pdf. Protection of that financial interest requires maintaining a fund for major capital expenses to prevent deterioration of the project and depreciation in value of the property. (*See id*.). It is axiomatic that financial reporting requirements were necessary to ensure the Reserve Account was funded and thus the USDA's financial interest in the project was protected.

Both the failure to fund the Reserve Account and comply with financial reporting requirements were nonmonetary defaults for which the USDA was entitled to suspend, and ultimately terminate, rental assistance payments, accelerate the loan, and foreclose on its collateral. 7 C.F.R. § 3560.456; (Compl., Ex 5 ¶ 7(b)). The USDA's exercise of this right to terminate rental assistance payments did not constitute breach of contract.

### B. The USDA Did Not Breach its Duty of Good Faith and Fair Dealing

Bluegrass argues that the USDA breached the covenant of good faith and fair dealing by "refus[ing] to pay rental assistance it was contractually obligated to pay[.]" (Compl. at ¶ 49). Bluegrass further argues its claim for good faith and fair dealing is distinct from its breach of contract claim thus the United States is not entitled to summary judgment, citing Kentucky law. (Pl. Resp. at 16–17). The United States, relying on federal law, argues Bluegrass's good faith and fair dealing claim is redundant because it rests on whether USDA was legally entitled to terminate the rental assistance payments. (Def. Reply at 6).

As a threshold matter, the United States is correct that federal law applies when the United States is a party to the contract. *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986). The duty of good faith and fair dealing is inherent in every contract, and requires each party not interfere with another party's rights under the contract. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010). When the government

has been found in violation of this duty, it usually involves a "bait-and-switch," wherein the government takes specifically targeted action aimed at reappropriating or rescinding the benefits guaranteed by the contract. *Id*. at 829. However, Federal law is clear that exercise of a legitimate contractual right cannot constitute breach of the duty of good faith and fair dealing. *Scott Timber Co. v. United States*, 692 F.3d 1365, 1375 (Fed. Cir. 2012) (quoting *David Nassif Assocs. v. United States,* 644 F.2d 4, 12 (Ct. Cl. 1981) ("[T]he assertion of a legitimate contract right cannot be considered as violative of a duty of good faith and fair dealing.")).

As discussed above, following Bluegrass's breach, USDA was contractually entitled to declare Bluegrass in default and ultimately terminate rental assistance payments. Exercise of this legitimate contractual right does not violate the duty of good faith and fair dealing.

### IV.     Conclusion

As explained above, the United States did not breach its contract with Bluegrass Lodge Apartments when it terminated rental assistance payments and exercise of its contractual rights to terminate these payments did not violate the duty of good faith and fair dealing. Therefore, the Court hereby **GRANTS** the United States' Motion for Summary Judgment.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/     David A. Tapp
DAVID A. TAPP, Judge
